**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BARBARA HARRINGTON, | : |
| Plaintiff, | : **Civil Action No. 14-cv-5764 (SRC)** |
| v. | : |
| BERGEN COUNTY, BERGEN COUNTY PROSECUTOR'S OFFICE, JOHN MOLINELLI, *in his official and individual capacities*, KENNETH ARDIZZONE, *in his official and individual capacities*, MICHAEL TRAHEY, *in his official and individual capacities*, FRANK PUCCIO, *in his official and individual capacities*, DAVID NATHANSON, *in his official and individual capacities*, and PATRICIA SPEAKE-MARTIN, *individually*, | : **OPINION** |
| Defendants. | : |

**CHESLER**, District Judge

This matter comes before the Court upon Defendants' three motions to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motions. The Court has considered the parties' submissions. For the reasons expressed in this Opinion, the Court will deny Defendants' motions and permit this case to proceed.

I.   BACKGROUND

A.  **Factual History**

In this case, a former public employee asserts that government officials violated her rights by forcing her to undergo a psychiatric evaluation against her will. The Court assumes the

following facts to be true for purposes of this motion only.

In 1980, Plaintiff began her employment at the Bergen County Prosecutor's Office ("BCPO"), where she would then work for approximately thirty years. She served most recently as a data programmer for the BCPO, and her performance evaluations were positive. During her employment, Plaintiff worked with and befriended David Martin. Mr. Martin is legally married to Defendant Speake-Martin, but the two have been separated since 2005.

In 2012, Plaintiff moved into Mr. Martin's home, where two of his and Speake-Martin's children also lived. Speake-Martin was upset that Plaintiff moved in with Mr. Martin. She expressed her displeasure to her good friend and former colleague, Defendant John Molinelli, who is also the Bergen County Prosecutor.

On September 21, 2012, what would later be referred to as "the text-message incident" took place. While waiting in line at a supermarket, Plaintiff tried to send Mr. Martin's children a text message by using the cellphone's voice-dictation feature. Plaintiff wanted to ask the children where Mr. Martin was, but the cell phone also picked up the voice of another person waiting in line. As a result, the message referred to Mr. Martin and an "accident." Plaintiff quickly sent a follow-up message to Mr. Martin's children and spoke with them by phone; she apologized and assured them that Mr. Martin was fine.

Speake-Martin read Plaintiff's message on one of her kid's phones. The next day, Plaintiff apologized to Speake-Martin for her error, explaining that it had been an accident. Speake-Martin, however, remained angry at Plaintiff, and she threatened to get her fired. Speake-Martin later spoke with Defendant Molinelli and insisted that he carry out her threat.

A few days later, on September 24th, Defendant Ardizzone, BCPO's Chief Information Officer, instructed Plaintiff and Mr. Martin to attend a meeting. Various individuals were

2

present in the office conference room, including Defendants Molinelli and Ardizzone, as well as David Nathanson (the Deputy Executive Prosecutor), Frank Puccio (the Executive Assistant Prosecutor), and Michael Trahey (from the Executive Office) (collectively "Defendants").  They instructed Mr. Martin to enter the room and told Plaintiff to wait outside in the hall.

Defendants asked Mr. Martin about the text-message incident, and Mr. Martin explained what had happened.  Defendants told Mr. Martin that Plaintiff was ill and potentially dangerous, and they informed him that Plaintiff was going to be taken to a psychiatric facility for seventy-two hours.  Mr. Martin responded that Plaintiff did not pose any danger.  Defendant Nathanson told Mr. Martin that if he defended Plaintiff, they would claim that Mr. Martin was himself delusional.  Defendants soon instructed Mr. Martin to leave and send in Plaintiff.  Plaintiff entered.  Defendants asked Plaintiff about the text-message incident, and she explained.  Defendants then told Plaintiff to leave again and have Mr. Martin return.  Mr. Martin reentered the conference room, and Defendants told him to inform Plaintiff that she was to be admitted to a psychiatric facility; they said the news would be better coming from him.

Mr. Martin left and told Plaintiff about Defendants' plan; she began to cry.  Detective Patricia DeSimone escorted Plaintiff to the office library.  Plaintiff was not permitted to leave the library, except to use the restroom once.  While Plaintiff waited, Defendants drafted a letter addressed to her, which stated that she was being suspended from work with pay, and which informed her that she was to be transported to a psychiatric facility for evaluation.  Approximately one hour later, Defendant Puccio gave Plaintiff the letter.  That document is entitled "Suspension with Pay," and it reads in part as follows:

> [E]ffective today, you are suspended with pay pending a psychiatric
> evaluation.  The basis for this action is a concern for whether you
> are capable of functioning in this workplace without posing a danger

3

> to yourself or others in light of the events that [the named
> Defendants] and I discussed with you this morning.  At the time of
> this writing, preparations are being made to have you transported to
> . . . a psychiatric facility for an evaluation in consultation with your
> private physician.

> (Compl., Ex. A).

The letter is dated September 24, 2012, and it is signed by Defendant Molinelli.

Detective DeSimone then drove Plaintiff to the Bergen Regional Medical Center ("the hospital").  Mr. Martin met Plaintiff there.  It was at this time, shortly before 1:00PM, that Plaintiff underwent an unwanted psychiatric evaluation.  At the hospital, several people interviewed Plaintiff.  A doctor spoke with Plaintiff and was surprised to learn that she had been brought there apparently due to sending an accidental text message.  The doctor concluded that Plaintiff was not psychotic, posed no danger, and that she should be discharged.  The hospital accordingly discharged Plaintiff shortly after 4:00PM that day.

Plaintiff resigned from her employment with the BCPO effective May 1, 2013; she claims that she was forced to do so.

**B.  Procedural History and Defendants' Motions**

Plaintiff filed the instant Complaint in September of 2014.  In it, Plaintiff alleges the following six counts against Defendants:  (1) unlawful seizure under the Fourth Amendment and in violation of 42 U.S.C. § 1983; (2) denial of procedural due process under the Fourteenth Amendment and in violation of 42 U.S.C. § 1983; (3) substantive due process violations under the Fourteenth Amendment and in violation of 42 U.S.C. § 1983; (4) a violation of the corresponding provisions of the New Jersey Constitution under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2; (5) conspiracy in violation of 42 U.S.C. § 1985(3); and (6) conspiracy under 42 U.S.C. § 1983 and the NJCRA.

4

On October 27, 2014, Defendant Bergen County moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Bergen County argues that it is not responsible for prosecutors' conduct, and that Plaintiff has stated no claim against it.

On October 28, 2014, Defendants BCPO, Ardizzone, Molinelli, Nathanson, Puccio, and Trahey ("the BCPO Defendants") moved to dismiss as well.  In support of their motion, the BCPO Defendants argue that they are immune from suit because they were engaged in law-enforcement activities and were acting as an arm of the State of New Jersey.  Apart from immunity, they suggest that Plaintiff has failed to state sufficient facts to support her claims.

On November 20, 2014, Defendant Speake-Martin also moved to dismiss.  Plaintiff's sole claims against Speake-Martin are for conspiracy, and in her motion, Speake-Martin argues that she is not a state actor and thus cannot be held liable.  Moreover, she asserts that even if she were a state actor, Plaintiff's conspiracy claim is inadequately pleaded.

Plaintiff opposes the motions.  She argues that the BCPO Defendants are not immune from suit, as they were engaged in administrative rather than law-enforcement conduct, and because Plaintiff sued the BCPO employees in both their official and individual capacities. Plaintiff urges that Defendant Bergen County is indeed liable for the conduct of its final policy maker on personnel matters, which here is Defendant Molinelli.  On the merits, Plaintiff contends that her Complaint details more than enough factual allegations to go forward.

## II.   DISCUSSION

### A.  Motions to Dismiss

A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic v. Twombly, 550 U.S. 554, 570 (2007)).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Following Iqbal and Twombly, the Third Circuit has held that to prevent dismissal of a claim the complaint must show, through the facts alleged, that the plaintiff is entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). In other words, the facts alleged "must be enough to raise a right to relief above the speculative level[.]'" Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555).

While the Court must construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678. In reviewing a motion to dismiss under Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990)).

**B. Defendants' Claims to Immunity and Related Defenses**

Before assessing the substantive sufficiency of Plaintiff's pleadings, the Court will assess the various Defendants' contentions that they are immune from suit, that they are not "persons" under Section 1983 or the NJCRA, or that they are otherwise not subject to liability under the circumstances. The Court will address such claims by (i) Defendant Bergen County; (ii) Defendant BCPO; (iii) Defendant BCPO Employees; and (iv) Defendant Speake-Martin.

6

i. **Defendant Bergen County**

Bergen County first contends that it is not vicariously liable for the actions of Bergen County prosecutors, as those officials constitute an arm of the State of New Jersey and not the County. Under New Jersey law, a county is not liable for prosecutors' law-enforcement activities, but it may be held liable for their administrative conduct. See Wright v. State, 169 N.J. 422, 450 (2001). The New Jersey Supreme Court has explained the dichotomy as follows: "[W]hen county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State . . . . [When they] perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, [they act] on behalf of the county[.]" Id. (quoting Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996), cert. denied, 519 U.S. 1084 (1997)); see also Lavezzi v. State, 219 N.J. 163, 178 (2014) ("[T]he test is whether the act or omission of the county prosecutor's office and its employees that gave rise to the potential liability derived from the prosecutor's power to enforce the criminal law[.]"); Cashen v. Spann, 66 N.J. 541, 552 (1975) (treating prosecutors as State agents for conduct that "arose out of the investigation of criminal activity"); Michaels v. State, 968 F. Supp. 230, 232-34 (D.N.J. 1997) (Barry, J.) (no claim against County related to prosecution of plaintiff), aff'd, 150 F.3d 257 (3d Cir. 1998).

Here, Bergen County may be vicariously liable under state law because there is no indication that the prosecutors' alleged conduct involved an investigative or crime-fighting function. Defendants do not contend that Plaintiff was under investigation for any unlawful activity, nor that the BCPO sought to initiate an arrest, indictment, or any law-enforcement proceeding against her. Instead, accepting the Complaint's allegations as true, the conduct

7

consisted of BCPO employers taking action against a BCPO employee for personal reasons.  The principles of Wright, 169 N.J. at 450, and its progeny, thus do not foreclose County liability here.

Bergen County next contends that it is not a "person" subject to suit under Section 1983 or the parallel NJCRA.  Federal law provides that if a "County Prosecutor was acting as the final decisionmaker for the county, [then] the county may therefore be held liable under § 1983." Pembaur v. City of Cincinnati, 475 U.S. 469, 485 (1986).  To determine whether an official has final decision-making authority for purposes of Section 1983 liability, a court assesses (1) whether the official is responsible under state law for policy-making in the area at issue, and (2) whether the official's authority in that area is "final and unreviewable."  Hill v. Borough of Kutztown, 455 F.3d 225, 245-46 (3d Cir. 2006).

In this case, discovery is needed to decide whether the criteria set forth in Pembaur, 475 U.S. at 485, and Hill, 455 F.3d at 245-46, are met.  The Court cannot now determine whether the action taken against Plaintiff was indeed a personnel decision rendered by a final decision-maker and whose determination was unreviewable.  Nevertheless, for purposes of this motion, Plaintiff has successfully alleged that those circumstances are at least plausibly present.  According to the Complaint, just before Plaintiff was taken to the hospital, she was handed a letter written by Defendant Molinelli, which was entitled "Suspension with Pay," and which explained that a psychiatric evaluation was needed to see if Plaintiff was "capable of functioning in this workplace[.]"  (Compl. Ex. A) (emphasis added); see also Pittsburgh, 147 F.3d at 259 (Court may review documents attached to Complaint when deciding motion to dismiss).  That suggests the conduct alleged amounted to a workplace policy, that is, an employment decision for which Molinelli had the final say.  See generally Mercer Cnty. Bd. of Chosen Freeholders v. Mercer

Cnty. Prosecutor, 412 A.2d 809, 810 (N.J. App. Div. 1980) ("[T]he Prosecutor [has] a dominant status in relation to the appointment of personnel[.]").

The Court thus rejects Defendant Bergen County's contentions that it may not be held vicariously liable under state law, or that it cannot be sued under Section 1983 or the NJCRA.

### ii.  Defendant BCPO

The BCPO similarly cites Wright, 169 N.J. at 450, and Coleman, 87 F.3d at 1499, to assert that it is immune from suit when acting in a law-enforcement capacity.  The Court rejects this argument for the same reasons discussed above with respect to Bergen County:  the conduct alleged here appears separate from the enforcement of a law, let alone any crime-fighting function of the prosecutor's office which could render it immune.

The BCPO next contends that it is entitled to sovereign immunity under the Eleventh Amendment of the United States Constitution.  In suits against a prosecutor's office, if the State is the real party in interest, then the prosecutor's office is immune.  See Estate of Lagano v. Bergen Cnty. Prosecutor's Office, 769 F.3d 850, 857-58 (3d Cir. 2014).  To determine whether the State is the real party in interest, courts consider three factors:  (1) whether the State would pay judgment; (2) the office's status under state law; and (3) the office's degree of autonomy from the State.  Id. at 857 (citing Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 659 (3d Cir.1989)).  These three "Fitchik factors" also implicate the same administrative versus law-enforcement inquiry discussed above.  See Beightler v. Office of Essex Cnty. Prosecutor, 342 F. App'x 829, 832 (3d Cir. 2009) (noting the analytical overlap between Fitchik and Coleman, and holding that a prosecutor's office was entitled to sovereign immunity because it "undeniably engaged in a classic law enforcement function when it charged" the plaintiff with a crime); Hyatt v. County of Passaic, No. 08–3206, 2009 WL 2055136 (3d Cir. July 16, 2009) (finding

9

prosecutor's office entitled to sovereign immunity for conduct that "related to their prosecutorial function, [and thus] the State would be liable for any judgment.").

Applying the first Fitchik factor here, the BCPO emphasizes that the State is liable for judgments against it.  It is unclear, however, whether the State would be on the hook financially, considering the non-prosecutorial nature of the conduct alleged.  Cf. Palmerini v. Burgos, No. 10-cv-210 (FLW), 2011 WL 3625104, at *8 (D.N.J. Aug. 15, 2011) ("[C]ourts within the Third Circuit have consistently and uniformly held that the Eleventh Amendment precludes federal suits against New Jersey county prosecutors, as well as their offices and staff, arising out of their law enforcement functions on the basis that the real party in interest in these suits is the State of New Jersey.") (emphasis added).  Applying the third Fitchik factor, it appears that the BCPO has autonomy from the State in decisions involving its employees, including Plaintiff.  See Coleman, 87 F.3d at 1502 ("[T]he Attorney General does not possess oversight authority with respect to the day-to-day management of the county prosecutor's office.").  Under the second factor, Defendants' emphasize that the BCPO is treated as an arm of New Jersey under state law.  The Court again notes that such a conception seems to pertain to law-enforcement activities; but even if it did not, here it cannot outweigh the first and third factors.  Cooper v. Se. PA Transp. Auth., 548 F.3d 296, 302 (3d Cir. 2008) (though all three factors are of equal importance, "how heavily each factor ultimately weighs in [the] analysis depends on the facts of the given case[.]").

In sum, the Court is not prepared to accept that the BCPO acted as an arm of the State when it allegedly had a BCPO employee involuntarily admitted.  For purposes of this motion, the Court rejects the BCPO's attempt to invoke the State's cloak of sovereign immunity.

### iii. Defendant BCPO Employees

On behalf of the BCPO Employees, the BCPO makes numerous arguments as to why they may not be held liable.  The Court will assess their claims regarding (1) sovereign immunity; (2) qualified immunity; and (3) New Jersey legislation.

First, pursuant to Eleventh Amendment sovereign immunity, a state official acting in an official capacity is not considered a "person" under Section 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  The United States Supreme Court reviewed the principle as follows:  "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."  Id. (internal citations omitted); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

Plaintiff aims her allegations, in part, against the BCPO Employees in their official capacities.  As discussed above, however, at this stage there is reason to conclude that the BCPO Employees acted as County -- rather than State -- officials.  In other words, official capacity suits may be the functional equivalent of suits against an official's office, but in this case, that office appears to be of the County and not of the State.  The County may ultimately be liable in light of the Complaint's allegations, as discussed above.  See Pembaur, 475 U.S. at 485; see also Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  The official-capacity suits are therefore not barred.

Furthermore, under any circumstances, state officials may be sued in their personal capacities.  Garden State Elec. Inspection Servs. v. Levin, 144 F. App'x 247, 251 (3d Cir. 2005).  "The Eleventh Amendment does not [] bar suits for damages against government officials sued in their personal capacities. In personal capacity suits, a plaintiff seeks to impose personal

liability upon an individual officer and recover from the personal assets of that officer.

Therefore, the Eleventh Amendment is not implicated because the State is not the real party in

interest." Id. (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  Personal liability may

arise under Section 1983 even if the conduct at issue was undertaken in an "official" capacity.

Hafer v. Melo, 502 U.S. 21, 28-29 (1991) (holding that state officials are subject to 1983 liability

even for acts taken under color of state law and within officials' authority or function).

    In this case, the Complaint names the individual BCPO Defendants in both their official

and individual capacities.  Despite Defendants' contentions otherwise, the fact that Plaintiff

names these Defendants in their personal capacities "is more than 'a mere pleading device.'"

Garden State, 144 F. App'x at 247 (quoting Will, 491 U.S. at 71).  Indeed, it further renders

Plaintiff's claims against the BCPO Employees viable.  The analysis on this issue is the same

with respect to Plaintiff's corresponding NJCRA claims.

    Second, the BCPO Employees argue that they are entitled to qualified immunity.  "The

principles of qualified immunity shield an officer from personal liability when an officer

reasonably believes that his or her conduct complies with the law."  Pearson v. Callahan, 555

U.S. 223, 244 (2009).  Qualified immunity attaches where officers act in unsettled areas of the

law, and it recognizes that if judges "disagree on a constitutional question, it is unfair to subject

police to money damages for picking the losing side of the controversy."  Id. at 245 (internal

citation and quotation marks omitted); see also S.P. v. City of Takoma Park, Md., 134 F.3d 260,

266 (4th Cir. 1998) ("Officials are not liable for bad guesses in gray areas[.]") (internal citation

and quotation marks omitted).  To determine whether qualified immunity applies, courts often

consider whether the plaintiff has alleged the violation of a clearly established constitutional

right.  See Pearson, 555 U.S. at 236; Saucier v. Katz, 533 U.S. 194, 201 (2001); Wilson v. Layne, 526 U.S. 603, 609 (1999).

Here, at this stage, the Court is not satisfied that the BCPO Employees are entitled to qualified immunity.  As will be discussed further in this Opinion, Plaintiff alleges violations of longstanding constitutional principles, including that against unreasonable seizures.  Vitek v. Jones, 445 U.S. 480, 492 (1980) (noting that "'[a]mong the historic liberties' protected by the Due Process Clause is the 'right to be free from . . . unjustified intrusions on personal security.'").  Moreover, at this point there is scant indication that the BCPO Employees acted mistakenly or in a good-faith effort to interpret a developing or "gray" area of law.  Neither the doctrine nor rationale of qualified immunity yet appear apt under these circumstances.

Third, the BCPO Employees invoke N.J.S.A. § 30:4-27.7, which provides that a law-enforcement officer acting in good-faith, "who takes reasonable steps to assess, take custody of, detain or transport an individual for the purposes of mental health assessment or treatment is immune from civil and criminal liability."  This statute does not apply to Section 1983.  Bates v. Paul Kimball Hosp., 346 F. App'x 883, 885 (3d Cir. 2009).  With respect to the NJCRA, the Court finds the statute inapplicable here.  Again, accepting Plaintiff's well-pleaded allegations as true, there simply is not yet any proffer that the BCPO Employees took "reasonable steps" in good faith to render mental-health treatment to Plaintiff.  Instead, the Complaint alleges in detail that the named officials had Plaintiff involuntarily admitted in furtherance of a personal favor.

All told, the Court rejects the arguments that the BCPO employees are not subject to suit.

### iv.  Defendant Speake-Martin

Defendant Speake-Martin argues that as a private citizen who acted in her own capacity, she may not be held liable under Section 1983 or the NJCRA.  Plaintiff's sole claims against

13

Speake-Martin are for conspiracy. The Supreme Court has held that so long as the requirement of state action is otherwise satisfied, private parties involved in conspiracies to violate someone's constitutional rights may indeed be held liable:

> [A] private party involved in such a conspiracy, even though not an official of the State, can be liable under [Section] 1983. Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents[.]
>
> [Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970) (internal citations and quotation marks omitted); see also Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (noting that "private party [who] has acted with the help of or in concert with state officials" may be treated at state actor)].

Moreover, the parties agree that the same analysis applies to the NJCRA.

Here, Plaintiff alleges that Defendant Speake-Martin planned and agreed with Defendant Molinelli, a public official, to pursue the alleged misconduct against Plaintiff. Accordingly, accepting Plaintiff's well-pleaded allegations as true, Defendant Speake-Martin is indeed subject to liability if Plaintiff ultimately proves her allegations. The Court thus denies Defendant Speake-Martin's motion to dismiss the claims against her.

### C.  The Adequacy of Plaintiff's Pleadings

Having determined that the Defendants are subject to suit, the Court now turns to the factual sufficiency of Plaintiff's allegations.

The Court must assess whether Plaintiff's allegations "state a claim for relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 554, 570 (2007). To state a claim for relief under Section 1983 or the NJCRA, Plaintiff must plausibly demonstrate that her rights were violated, and that the persons who violated her rights acted under the color of state law.

14

Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)).  Plaintiff claims numerous violations of her rights, and the Court will assess such claims in the following order:  (1) unlawful seizure; (2) denial of procedural due process; (3) substantive due process violations; and (4) conspiracy.

### i.   Unlawful Seizure

Plaintiff claims that Defendants unlawfully seized her.  The Court must therefore assess whether Defendants' conduct toward her constituted a "seizure" for constitutional purposes. Under the Fourth Amendment, a seizure takes place when the government intentionally restrains someone's freedom.  See Florida v. Bostick, 501 U.S. 429, 434 (1991) ("[W]hen the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . a 'seizure' has occurred.").  The Third Circuit has articulated that "a seizure results from coercive pressure from state actors resulting in a significant, present disruption of the targeted person's freedom of movement."  James v. City of Wilkes-Barre, 700 F.3d 675, 681-82 (3d Cir. 2012) (internal quotation marks and citation omitted).

To assess whether a seizure has occurred, courts consider "all of the circumstances surrounding the encounter," and decide if the "conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."  Kaupp v. Texas, 538 U.S. 626, 629 (2003) (internal citation and quotation marks omitted).  The Supreme Court has described facts that may indicate a seizure, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  Id. at 630 (internal citation and quotation marks omitted).

15

Here, Plaintiff alleges facts which, if true, constitute a seizure.  Plaintiff alleges the following: first, her supervisor instructed her to attend a meeting with five officials from the prosecutor's office, who were Plaintiff's employers in addition to being law-enforcement personnel; then, pursuant to those officials' directive, a police detective took Plaintiff to the office library where she was only permitted to leave once for the restroom; and finally, most significantly, that same detective then took Plaintiff to a hospital to be checked in for a psychiatric evaluation that she did not wish to undergo.  Under those circumstances, a reasonable person would likely not have felt free to simply ignore the prosecutors' directives, disregard the instructions of the detective, or flee from the hospital once brought there.  It appears, in sum, that Plaintiff was not free to "go about [her] business."  Kaupp, 538 U.S. at 629.

Defendants emphasize that Plaintiff was not handcuffed or physically threatened.  Such facts are not prerequisites.  Plaintiff's allegations somewhat resemble those made in Shuman v. Penn Manor Sch. Dist., 422 F.3d 141, 147 (3d Cir. 2005).  There, the Third Circuit determined that a high school student had indeed been "seized" when he was told to stay in a conference room under a school administrator's directive.  Likewise, here Plaintiff was allegedly detained in a library under prosecutors' directive, and added to that, Plaintiff alleges that a detective then forcibly took her to a hospital to undergo an unwanted examination, where she had to stay until being discharged.  The Court thus finds that Plaintiff has alleged a "seizure."  See Tennessee v. Garner, 471 U.S. 1, 7 (1985) ("Whenever an officer restrains the freedom of a person to walk away, he has seized that person.").

As to the lawfulness of that action, seizures typically require a warrant.  Shuman, 422 F.3d at 147 ("With limited exceptions, a search or seizure requires either a warrant or probable cause.").  Plaintiff alleges that Defendants seized her without a warrant or probable cause, and

she has thus stated a plausible violation of her rights, recoverable under Section 1983 and the NJCRA. Defendants' motion to dismiss this count is accordingly denied.

### ii. Denial of Procedural Due Process

Plaintiff claims that Defendants violated her right to procedural due process by having her brought to a hospital and forcing her to undergo a psychiatric evaluation against her will. As a preliminary matter, and as Defendants emphasize, Plaintiff's Complaint uses the term "involuntary commitment" to describe what allegedly happened to her. Even accepting the Complaint's allegations as true, it appears to the Court that Plaintiff was not civilly committed. Plaintiff alleges that she was taken to the hospital and forced to undergo a psychological evaluation, but significantly, she also alleges that the preliminary evaluation culminated in her being discharged rather than committed. The Court will therefore assess Plaintiff's procedural due process claim with respect to the facts alleged, rather than apply the law governing "civil commitment," a term less-than artfully applied here.

Courts assess procedural due process claims by inquiring as to "(1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property'; and (2) whether the procedures available provided the plaintiff with 'due process of law.'" Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

Having alleged that she was physically detained, forcibly taken to a hospital, and then forced to undergo an unwanted assessment, Plaintiff has identified a cognizable liberty interest -- her physical personal security -- to satisfy the first prong. See, e.g., Vitek, 445 U.S. at 492.

As to the second prong, the question becomes whether Defendants afforded Plaintiff sufficient procedural process before infringing upon that liberty interest. To determine what procedural protections are needed under certain circumstances, courts weigh numerous factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Weighing those factors, the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990).

Here, Plaintiff has alleged facts which suggest that Defendants afforded Plaintiff with no meaningful "process" whatsoever before taking her to the hospital and forcing her to undergo an evaluation. According to the Complaint, Defendants did not provide Plaintiff with "some kind of hearing," id., initiate court proceedings, or permit Plaintiff to challenge Defendants' plan. In short, Plaintiff was allegedly afforded no procedural due process, and the second element is met.

Plaintiff has adequately pleaded a plausible violation of her due process right, which is recoverable under Section 1983 and the NJCRA. The Court will thus deny Defendants' motion to dismiss this allegation for the failure to state a claim upon which relief can be granted.

### iii. Substantive Due Process Violation

Plaintiff claims that Defendants' conduct similarly violated her right to substantive due process. To assess such a claim, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Benn v. Universal Health Sys., 371 F.3d 165, 174 (3d Cir. 2004) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847, n.8 (1998)). Courts answer that question as a matter of law. Id. "Negligent conduct is never egregious enough to shock the

conscience, but conduct intended to injure most likely will rise to the level of conscience-shocking." A.M. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 579 (3d Cir. 2004).

Here, Plaintiff alleges conduct which, if proven true, shocks the conscience. "[T]he substantive due process guarantee protects against government power arbitrarily and oppressively exercised," and "was intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression." See Lewis, 523 U.S. at 846 (internal quotation marks and citations omitted). Plaintiff accuses public officials of using their authority to forcibly take a public employee to the hospital and have her undergo an unwanted psychiatric evaluation, all in the furtherance of a personal vendetta rather than a legitimate governmental purpose. Such conduct would indeed contravene the guarantee of substantive due process. Id. The Court will accordingly deny Defendants' motion to dismiss this claim.

### iv.  Conspiracy

Last, Plaintiff claims that Defendants conspired to violate her rights, in violation of Sections 1983 and 1985. To recover on this basis under Section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." Laurensau v. Romarowics, 528 F. App'x 136, 140 (3d Cir. 2013) (quoting Parkway Garage v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993)). To prove conspiracy under Section 1985(3), a plaintiff must satisfy four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson,

440 F.3d 131, 134 (3d Cir. 2006) (quoting <u>United Bhd. of Carpenters & Joiners v. Scott</u>, 463
U.S. 825, 828-29 (1983)).

      For reasons largely set forth already, the Court finds that Plaintiff has pleaded sufficient
factual allegations to support her claim that Defendants' unlawfully agreed to, and then did,
violate her rights.  The allegations regarding the orchestrated manner in which Plaintiff was
taken to the hospital support a reasonable inference that an agreement preceded that activity.
Moreover, while much information remains unknown, Plaintiff has alleged who the specific
individuals involved were, the content of their plan, and the narrow time frame -- September 21
to 24, 2012 -- during which the alleged conspiracy and corresponding conduct occurred.
Plaintiff has done more than plead a "conclusory allegation of agreement at some unidentified
point." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007).  She has raised her entitlement to
relief for an unlawful conspiracy above the speculative level, and the Court will accordingly
deny Defendants' motion to dismiss these claims.

**III.    CONCLUSION**

      For the reasons above, the Court will deny Defendants' three motions to dismiss the
Complaint.  A corresponding order will be issued.


                                     <u>    s/ Stanley R. Chesler    </u>
                                     STANLEY R. CHESLER
                                United States District Judge

Dated:  February 23, 2015