NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
BARBARA HARRINGTON,                     :  Action No. 2:14-cv-05764-SRC-CLW
                                        :
          Plaintiff,                   :
                                        :
   v.                                   :  **OPINION & ORDER**
                                        :
                                        :
                                        :
BERGEN COUNTY, BERGEN COUNTY            :
PROSECUTOR'S OFFICE, JOHN MOLINELLI,    :
in his official and individual capacities, :
KENNETH ARDIZZONE, in his official and  :
individual capacities, MICHAEL TRAHEY, in his :
official and individual capacities,     :
FRANK PUCCIO, in his official and individual :
capacities, DAVID NATHANSON, in his     :
individual and official capacities, and PATRICIA :
SPEAKE-MARTIN, individually,            :
                                        :
          Defendants.                  :
_____:

      Currently before this Court is Plaintiff's motion for entry of a protective order in which she asserts that certain discovery sought by Defendants is protected by attorney-client privilege and work product privilege pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure. Having considered the parties' submissions and for the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

**I.    Background**

      Plaintiff, who worked at the Bergen County Prosecutor's Office for about thirty years, filed the instant civil rights suit against her former employer and certain colleagues in relation to an alleged "erroneous text message" incident and the tumultuous days that followed. (Am. Compl.,

1

ECF No. 55.) In short, Plaintiff resided with her friend and colleague, David Martin, along with children he had with Defendant Speake-Martin, a colleague to whom he was married but separated. (Id., ¶¶ 23-34.) On September 21, 2012,[1] Plaintiff was in possession of Martin's cell phone and, while attempting to use its voice dictation feature, sent an "erroneous text message" to Martin's children that suggested Martin was in an accident. (Id.) Upset by this, Speake-Martin expressed her displeasure not only to Plaintiff but also to colleagues who are now Defendants and, in turn, various of these Defendants threatened retaliation against Plaintiff, questioned her, held meetings regarding her conduct and mental fitness and, ultimately and critically, suspended her pending her admission to a psychiatric facility. (Id., ¶¶ 40-68.) Plaintiff was then "involuntarily committed for psychiatric evaluation shortly before 1:00 pm on September 24, 2012" and, "only a few hours after being involuntarily committed by Defendants for a three day psychiatric evaluation, Plaintiff was discharged[.]" (Id., ¶¶ 68-87.) As a result of the distress caused by this episode as well as by an evaluation while on unpaid leave, "Plaintiff was forced to resign her employment." (Id.)

Central to the instant motion is Plaintiff's subsequent application for "enhanced disability benefits in an administrative proceeding." (Motion, ECF No. 62-1, at 5, 10-11.) Plaintiff contends that "Martin helped [her] navigate the administrative process[]" such that "the communications between, and among, each of" Plaintiff, Martin, and her attorney for the administrative proceeding, Michael J. Muller, are privileged because "Martin's assistance was necessary and he was acting as a conduit between Muller and Plaintiff, [and] Plaintiff and Muller believed the communications would be subject to the attorney-client" and work product privileges. (Id.; Reply, ECF No. 66, at 4-6.) Plaintiff accordingly seeks an order preventing Defendants from discovering

---

[1] Although Plaintiff cites both 2012 and 2014 as years in which these events occurred, the description of the allegations suggests that the relevant events subsequent to the "erroneous text message" incident were in 2012. See Am. Compl., ECF No. 55, ¶¶ 26-87; Motion, ECF No. 62-1, at 6-9; Reply, ECF No. 66, at 7 (references to the record use page numbers assigned by CM/ECF).)

2

communications and documents involving Martin because the attorney client and work product privileges apply here and have not been waived. (Motion, at 12-19; Proposed Order, ECF No. 62-6; Reply, at 13-20.)

As an initial matter, Defendants[2] argue that the attorney client privilege never attached because "Plaintiff concedes that Martin was merely a conduit for information transmitted between her and her attorney, and that she did, in fact, communicate with her attorney numerous times." (Opp., ECF No. 65, at 19-20.) Even if privilege attached, Defendants continue, then Plaintiff nonetheless waived the privilege by disclosing the subject communications to Martin. (Id., at 22-25.) By reference to Plaintiff's "undetailed privilege log that does not show the substance of the communications[,]" Defendants likewise contend that the work product doctrine is inapplicable because Attorney Muller "does not assert that documents claimed to be protected by the work-product privilege were prepared at his direction in anticipation of litigation." (Id., at 25-27.) Defendants also urge the Court to conduct an *in camera* review to ensure that the "documents actually fall within these claimed privileges." (Id., at 27-30.)

## II.    Standard

Plaintiff seeks a protective order on the basis of attorney-client privilege as well as work product privilege.[3] Pursuant to Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" The Court accordingly may "forbid[] the disclosure or discovery" or "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ.

---

[2] The opposition was filed by Defendants Bergen County Prosecutor's Office, John Molinelli, Kenneth Ardizzone, Michael Trahey, Frank Puccio, and David Nathanson, and joined by Defendant Speake-Martin. (Opp., ECF No. 65; Letter, ECF No. 67.)

[3] The parties briefly debate whether federal or state law applies to the attorney-client privilege issues, but ultimately acknowledge that there is no substantive difference. See Motion, at 8; Opp., at 13-14; Reply, at 13-15.

P. 26(c)(1). The party seeking the protective order must demonstrate good cause. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). "'Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure.'" Id. at 786 (quoting Publicker Indus. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)).

"[I]t is well established that '[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged.'" Wachtel v. Health Net, Inc., 482 F.3d 225, 230-31 (3d Cir. 2007) (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)). The attorney-client privilege applies where a party seeking to invoke the privilege demonstrates that 1) a communication is made by or to an attorney, 2) who is acting as a lawyer with respect to the communication, and 3) the communication was made primarily for the purpose of securing an opinion of law, legal services, or assistance in a legal proceeding. Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994); In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979). And, of particular importance here, "[w]hen disclosure to a third party is necessary for the client to obtain informed legal advice, courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege." Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991) (observing that "courts have held that the client may allow disclosure to an 'agent' assisting the attorney in giving legal advice to the client without waiving the privilege" (citations omitted)); In re Grand Jury Investigation, 918 F.2d 374, 384 (3d Cir. 1990) (recognizing that "the presence of third parties, if essential to and in furtherance of the communication, should not void the [attorney-client] privilege"). "The party claiming a third-party as an agent bears the burden to show the privilege has not been waived." Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 311 (D.N.J. 2008) (citing Cellco P'ship v. Certain Underwriters at Lloyd's London, 2006 WL 1320067, at *2 (D.N.J. 2006)).

4

The work product privilege, on the other hand, is "distinct from and broader than the attorney-client privilege." U.S. v. Nobles, 422 U.S. 225, 238 (1975). "The work product doctrine is governed by a uniform federal standard set forth in Fed.R.Civ.P. 26(b)(3) and shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661-62 (3d Cir. 2003) (citations and quotations omitted). Specifically, the work product doctrine provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A); Louisiana Mun. Police Employees Ret. Sys., 253 F.R.D. at 306-07 (collecting cases and summarizing requirements for assertion of the privilege, i.e., that litigation was reasonably anticipated and that documents at issue were prepared primarily for the purpose of litigation). "The burden of demonstrating that a document is protected as work-product rests with the party asserting the doctrine[,]" Conoco Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir. 1982), though the burden of establishing waiver of the work-product doctrine falls on the party seeking to establish waiver. Westwood Prod., Inc. v. Great Am. E & S Ins. Co., 2011 WL 3329616, at *9 (D.N.J. 2011). Importantly, "work-product remains protected even after the termination of the litigation for which it was prepared." Maldonado v. New Jersey ex rel. Admin. Office of Courts-Prob. Div., 225 F.R.D. 120, 131 (D.N.J. 2004) (citing FTC v. Grolier, Inc., 462 U.S. 19, 25 (1983)).

### III.   Discussion

### A.   Facts

The following facts guide the Court's determination of whether the attorney-client and work product privileges warrant entry of the protective order sought by Plaintiff. Plaintiff asserts

that "after [she] was forced to resign," she "was in no shape" to consult or "reach out" to an attorney on account of fear, anxiety, and post-traumatic stress disorder. (Harrington Decl., ECF No. 62-2, ¶¶ 2-6.) In particular, though she "discovered that [she] could apply for enhanced disability retirement benefits[,]" the process was "too much" so Martin "reached out to prospective attorneys for [her]." (Id.) Plaintiff emphasizes that, although the administrative law judge denied Martin's application to serve as her representative, "Martin was essential to the administrative process" such that she would have been unable to communicate with Attorney Muller or otherwise "understand the process" and maintains that she "believed the communications between, and among, Muller, Martin and [her] would be subject to the attorney-client privilege and/or work product privilege." (Id., ¶¶ 7-11; Opp., ECF No. 65-1, Ex. B, at 8.) Plaintiff also supplies documentary evidence in the form of non-privileged items that demonstrate Martin's role in acting on her behalf. E.g., Ex. B, ECF No. 66-1, at 10 (email exchange in which Martin transmits Plaintiff's "Report of Injury Form for September 24, 2012" to the Division of Personnel"); Ex. D, at 15 (email in which Martin writes regarding leave of absence); Ex. E, at 17 (email in which Martin writes regarding short term disability benefits); Ex. F, at 19-20 (letter in which Martin poses questions regarding Plaintiff's disability benefits and leave of absence); Ex. H, at 27-28 (letter in which Plaintiff refers to Martin as her "non-lawyer assistant" who the administrative law judge permitted "to assist [her] on such short notice").

     Attorney Muller summarizes how he dealt primarily with Martin, indicates that his "initial meeting with Plaintiff was unusual in that [he] met with her only after meeting with Martin" first, and asserts that he "communicated exclusively with Martin" in relation to Plaintiff's administrative action seeking enhanced retirement disability benefits. (Muller Decl., ECF No. 62-3, ¶¶ 1-8.) Attorney Muller also represents that Martin's aid was necessary for direct communication with

6

Plaintiff and "to effectively represent Plaintiff consistent with [his] ethical and professional obligation to [her]." (Id., ¶¶ 9-12.) Attorney Muller further asserts that it was his "understanding that Plaintiff was unable to effectively participate in the preparation of her case without Martin's assistance due to Plaintiff's fragile emotional/mental state[]" and that, "since Martin was acting as a conduit between Plaintiff and [him, he] believed the communications would be subject to the attorney-client privilege and/or work product privilege." (Id.)

Finally, Plaintiff submits two privilege logs: the first reflects Attorney Muller's file, and the second reflects Plaintiff's emails and computer files. (Muller Log, ECF No. 62-4, Ex. D, at 44-48; Harrington Log, ECF No. 62-4, Ex. E, at 50-63.) The privileged items to which Martin was privy—whether as an author or recipient—are notes, letters, and emails relating to expert reports, expert testimony, Plaintiff's disability hearing, interrogatories, "discovery issues," and the retention of Plaintiff's counsel in the instant matter. (Id.)

**B.  Application**

First, as to the attorney-client privilege, the Court is not convinced that disclosure to Martin was necessary or essential for Plaintiff to obtain informed legal advice and therefore concludes that the privilege did not attach.[4] The Court credits Plaintiff's earnest desire for Martin's assistance on account of her state of mind. See Harrington Decl., ECF No. 62-2; Chalemian Dep., ECF No. 62-4. The Court likewise does not doubt that Martin has provided meaningful assistance to Plaintiff in the administrative proceeding and generally in the time since the alleged events giving rise to this case. However, as Defendants point out, Opp., at 17-24, Plaintiff's claim of privilege is

---

[4] As Defendants suggest, the concept of waiver does not properly apply where the third party is present when the communication is made, i.e., privilege never attached in the first instance and waiver instead may apply where there is a subsequent disclosure to a third party. See Opp., at 14-15 (citations omitted). Based on the record presented, the Court proceeds as if Martin was present for the communications for which attorney-client protection is sought, and thus concludes that privilege never attached. However, for the same reasons discussed herein, the Court also concludes that waiver would apply and the communications still would not be privileged even if it were the case that the communications at issue were later disclosed to Martin.

undermined by her varied interactions with Attorney Muller as well as the latter's ability to confer with her remotely. See Muller Decl., ECF No. 62-3; Muller Log, ECF No. 62-4, Ex. D, at 44-48; Harrington Log, ECF No. 62-4, Ex. E, at 50-63. And though she emphasizes her mental illness, Plaintiff offers no medical or other expert opinion addressing the particular circumstance presented—i.e., her incapacitation and the apparent concomitant necessity of having a layperson assist her. Plaintiff similarly offers no evidence of failures to communicate or attempts to memorialize Martin's role. Indeed, it must be emphasized that, "[b]ecause the attorney-client privilege obstructs the truth-finding process, it is construed narrowly [and, accordingly, t]he privilege 'protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" Westinghouse, 951 F.2d at 1423-24 (emphasis in original and citations omitted). Mindful of this narrow construction and in light of Martin's role, the Court finds the situation presented to be distinguishable from circumstances in which a third party was deemed necessary and hence did not defeat attorney client privilege. See Louisiana Mun. Police Employees Ret. Sys., 253 F.R.D. at 311-14 (surveying case law and noting that "[t]he concept of the attorney-client privilege extending to third-party agents has been developed through case law and has included 'investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists in a variety of social and physical sciences'"); see also Cavallaro v. United States, 284 F.3d 236, 249 (1st Cir. 2002) ("The involvement of the third party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications."). The Court therefore concludes that Plaintiff has not demonstrated that attorney-client privilege applies to communications involving Martin.

The Court also finds that the work product doctrine does not protect documents, emails, or other items created by Martin. Although Rule 26, by its terms, protects documents prepared by an

8

agent, such protection extends "to materials prepared by an attorney's agent, if that agent acts at the attorney's direction in creating such documents." In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d Cir. 1998) (citing United States v. Nobles, 422 U.S. 225, 238-39 (1975)); Cendant, 343 F.3d at 662 (The work product "protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants."); Cooper Health Sys. v. Virtua Health, Inc., 259 F.R.D. 208, 214 (D.N.J. 2009) (declining to afford work product protection where the emails at issue "were not prepared by or for attorneys" and "no evidence [was] presented that when [the agents] prepared the emails they were acting as agents or consultants for attorneys"). Here, Defendants emphasize that Attorney "Muller's Declaration does not assert that documents claimed to be protected by the work-product privilege were prepared at his direction in anticipation of litigation." (Opp., at 27.) The Court agrees, as while Plaintiff contends that the documents at issue "were prepared by Martin at Muller's request for Muller's use in Plaintiff's Administrative matter[,]" Motion, at 18, Plaintiff's assertion relies on Attorney Muller's statement that when he "had questions, needed information, documents or clarification, [he] had to request such information from Martin." (Muller Decl., ¶ 8.) Attorney Muller's Declaration, even when read in conjunction with that of Plaintiff, only describes an arrangement of sorts, provides no further basis for a finding of the requisite "direction" or agency relationship, and, again, Martin's mere assistance without, for example, a memorialized relationship or particularized duties, is insufficient to garner work product protection. This reasoning applies in equal force insofar as Plaintiff contends that Martin served as her agent or representative, as opposed to Attorney Muller's. Thus, the Court therefore finds that Plaintiff has not demonstrated that work product privilege protects the items prepared, created, or otherwise authored by Martin.

As for the remaining disputed items for which Plaintiff claims work product privilege, i.e., those created or otherwise authored by Plaintiff or Attorney Muller and transmitted to or shared with Martin, the Court finds that the work product privilege protects against disclosure. The privilege applies because it is plain that the items at issue were prepared primarily for the ongoing administrative litigation, there is no indication of disclosure to adversaries, and Defendants have not demonstrated waiver. See Cooper Health Sys., 259 F.R.D. at 215 ("The essential question with respect to waiver of work product is whether the material has been kept away from adversaries.")

### IV. Conclusion

In sum, upon review of the considerable record presented in conjunction with the standards governing the attorney-client and work product privileges, Plaintiff's motion for a protective order is denied insofar as it claims attorney-client privilege, denied insofar as it claims work product privilege over items prepared, created, or otherwise authored by Martin, and granted insofar as it claims work product privilege over items created by Plaintiff and Attorney Muller to which Martin was privy. Plaintiff accordingly shall provide discovery and revise privilege logs consistent with this Order.

**ACCORDINGLY, IT IS** on this 13th day of September, 2016,

**ORDERED** that Plaintiff's motion for an entry of a protective order is **DENIED IN PART AND GRANTED IN PART**; and

**FURTHER ORDERED** that Plaintiff shall provide discovery and revise privilege logs consistent with this Order; and

**FURTHER ORDERED** that the Clerk shall terminate ECF No. 62.

*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**